## Case No. 5,048.

FRANCONET v. The F. W. BACKUS.

[Newb. 1.][1]

District Court, D. Michigan.   1852.

WILKINS, District Judge.   This is a libel for seaman's wages, promoted by the first engineer of the propeller. The important exhibits in the libel are as follows: "That at the time of the contract for which suit is brought, and wherein the alleged services were rendered, the said vessel was and continued to be enrolled, and licensed and engaged in the business of navigation and commerce, between the ports of Detroit and Buffalo: that the libelant was employed on said boat by the agent thereof, by and for the year beginning and ending at the close of navigation in each year: that for years previous to the close of navigation of 1851, the libelant, as engineer of said vessel, rendered appropriate services in that capacity: that at the close of navigation in the year 1851, he entered upon the fulfillment of another year's services upon said vessel, and continued in that capacity until about the 17th day of December, and that he was to receive the sum of $550 per year." All these exhibits in the libel, with the exception of the last, are fully admitted and conceded in the answer filed by the intervening claimant; and even the last is conceded in a modified form by the reduction simply of $50 on the year's salary. The answer stating: "That the libelant had been employed on said propeller by respondent at the close of navigation of 1851, as first engineer for a year thereafter, and was to receive for his services in that capacity, not the sum of $550, but the sum of $500—and that, under said contract, the libelant did enter upon the performance of the services for the year for which he had been employed." These admissions in the answer obviate the necessity of any inquiry into the proposition raised in the argument, based upon the supposition that the contract with the libelant was entered into at Malden, in Canada West, and consequently constituted no lien on the vessel. The intervening claimant negotiated

[1] [Reported by John S. Newberry, Esq.]

with the prior owners of the vessel, in March, 1852, at Malden, for the controlling interest in the same, while the vessel was moored in that foreign port, but the bargain was perfected at Detroit. And there is no proof that the antecedent contract with the libelant was originally made in Canada, and such a fact will not be inferred in contradiction to the admission of the answer, from the circumstance of the vessel being temporarily at Malden, a foreign port, it is true, but a port intervening between Detroit and Buffalo, and embraced within the coasting trade of the lakes as defined in the act of congress. The jurisdiction of this court, in cases of admiralty, does not rest upon the statute of 1845, but upon the constitution of the United States, and is not limited to tide waters, but embraces the lakes and navigable rivers, through which commerce is carried on between different states, or with a foreign nation. At the time the constitution was framed, but little was known as to the extent and character of the North-western lakes, and in conferring admiralty and maritime jurisdiction upon the courts of the United States, it was technically understood to embrace only those waters characterized by the ebb and flow of the tide. But in The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 443, the supreme court of the United States have decided that these lakes are, as great inland seas, embraced within the spirit of the constitution, and that the maritime jurisdiction of the federal courts as to them does not depend upon the old common law technicality. Whether, then, the contract with the libelant, was made in Canada or not, a fact that does not appear, the vessel, being licensed under the statute of the United States, and enrolled as sailing from Detroit to Buffalo, and for years so engaged, is subject to the law governing maritime contracts, and the presumption is, that her officers and crew were duly engaged in her service in a domestic port.

On the pleadings, then, we hold that the libelant is entitled to the year's wages; that his salary as engineer commenced in the fall of 1851; that his wages constitute a lien on the vessel; and that the intervening claimant purchased the vessel, subject to such lien. By the testimony, he voluntarily left the vessel, being discharged on the 16th of September, 1852; he is therefore to receive his wages, up to that time; or—which amounts in calculation to the same thing—a year's wages, deducting two months and half, or about $100. Th only point, then, presented by the pleadings, on which there is a difference of opinion between the parties, is, as to the amount of salary for which the vessel was made liable to libelant. One of the former owners of the vessel, Theodore S. Park, swears that the contract with the libelant for the year 1851-2, was $550; that it had been $500 the year before, but the owners had raised it $50 for the year 1851-2. In contradiction to this, Capt. Langly testifies that while he navi-

gated the vessel, the libelant repeatedly stated his wages at $500, and the clerk, Fitzhugh, in making out his bill at the time of his discharge, allowed him only $500, and to which libelant made no exception at the time. This all may be so, and yet it does not contradict the testimony of the former owner, who may have raised his wages to the amount stated, without at the time apprising the libelant, and I am more inclined to rely on the statement of the old owner as to this fact, than the evidence of Capt Langly or the clerk. Enter decree, then, as follows:

| | |
|---|---|
| Nine months and a half, at the rate of $550 per year | $435 41½ |
| Credit by payments | 236 00 |
| Decree for libelant, balance | $199 41½ |